# Beatty v. Olyphant Borough School District et al.

*Joseph T. McDonald*, for plaintiff.

*O'Malley, Hill, Harris & Harris*, and *Maurice Cummings*, for defendant.

Hoban, J., January 20, 1941.—This is a petition for writ of mandamus to compel defendant school district and the proper officials thereof to enter into a contract with plaintiff for teaching services in the form provided by the Teachers' Tenure Act of April 6, 1937, P. L. 213, at the same rate of pay which plaintiff was receiving during her services prior to and at the time of the passage of said act. The petition avers that plaintiff had been regularly employed as a teacher for defendant school district at a stated salary; that after the passage of the Teachers' Tenure Act the school district failed to tender to her a proper contract under the said act, and thereafter reduced the rate of her pay as a teacher below the amount she had been receiving at the time of the passage of the act, which plaintiff claims is an unlawful demotion in pay. The answer admits that no contract was ever executed as required by the Teachers' Tenure Act between plaintiff and defendant; that at the time of the passage of the act plaintiff was receiving the salary as stated in her petition, but that subsequent to the time of the passage of the act, by proper resolution of the members of defendant school board, a general rearrangement of all salaries of teach-

ers employed in the Olyphant School District was effected, which resulted, inter alia, in the reduction of the salary of plaintiff to the minimum amount prescribed by the School Code for her position and length of service; that this reduction was part of a general reduction of all teachers who had been receiving pay higher than the amount prescribed by the School Code; that the general reduction was made necessary by the financial condition of the school district and by the orders of the proper officials of the State Department of Education, and that such a reduction when accomplished in the manner aforesaid is not contrary to the provisions of the Teachers' Tenure Act with reference to demotion in pay or position. The replication joins issue with respect to certain matters of fact and law offered in the return.

This is one of five separate cases arising out of the general rearrangement of salaries in the Olyphant School District, and the facts in the other cases are similar except as to the amounts of salaries of the respective plaintiffs in the other cases. The testimony in this case will disclose the situation as to the other teachers, and the adjudication in this case will control the disposition of the other four cases. . . .

### Discussion

It was conceded, both by brief and at the oral argument on behalf of defendant school district, that petitioner, Marie Beatty, as well as the other teachers concerned, whose salaries had been reduced in accordance with the resolution of August 16, 1938, were professional employes of defendant school district at the date of the passage of the Teachers' Tenure Act of April 6, 1937, P. L. 213, and were and are entitled to have professional contracts, as required by the Teachers' Tenure Act, entered into between the said teachers and defendant school district, and that they should be considered as having a proper tenure contract status from the effective date of the act.

The only question, therefore, remaining for disposition is whether or not petitioner and the other teachers concerned are entitled to have, from the effective date of the act, contracts which provide for a rate of pay not less than that which they were receiving on said date. Defendants claim that the Teachers' Tenure Act does not bar the school district from effecting a general rearrangement of salaries in accordance with the financial condition of the school district, and that such general rearrangement of salaries, provided no discrimination is exercised, does not amount to a demotion either in pay or position such as is prohibited by the Teachers' Tenure Act. Defendants argue that this situation is controlled by the decision in Smith v. Philadelphia School District et al., 334 Pa. 197. In that case the Supreme Court, speaking through Mr. Justice Drew, stated (p. 205) :

"It is obvious that the legislature did not intend that Sec. 3 of the Tenure Act should be construed to 'freeze' salaries above the statutory minimum schedules where to do so would bind the school district to contracts for which it could not legally secure the required revenue."

The situation in the Smith case was somewhat similar to the case at bar. The Philadelphia School District, being in financial distress, reduced its entire salary schedule, but in no case did the modification place the salary below the minimum set by the Edmonds salary schedule, as provided in section 1210 of the School Code of May 18, 1911, P. L. 309. The only variance in the situation here is that the salaries of 13 teachers in defendant school district, which were below the minimum provided by the above section 1210 (hereinafter referred to as the Edmonds Act), were raised to conform to the provisions of that act. But we are not convinced that this action of the school district alone worked any discrimination against petitioner or the other teachers whose salaries were reduced. Clearly,

the teachers who were receiving amounts below those required by the Edmonds Act, assuming that they were properly qualified and certified, had a legal right to insist that they should be paid the minimum salaries provided by the School Code, but no other teacher had a right to insist on receiving a higher salary unless some contract provision or provision of the School Code provided therefor. But the Supreme Court, in Smith v. Philadelphia School District et al., supra, says that every contract executed between a teacher and a school district must be read in the light of the provisions of the code, and that where the financial situation of a school district requires it the school district has a right to modify such contracts so long as teachers are not reduced below the minimum School Code requirements, provided that no discrimination as between teachers is exercised.

In Smith v. Philadelphia School District et al., supra, it is stated (p. 205) :

"Section 3 of the Tenure Act requires that where there is a 'demotion in salary' there shall be a hearing in the same manner as provided in case of dismissal. Section 2 sets forth the procedure to be followed in conducting such hearings. It is there provided that charges shall be filed against the teacher and that at the hearing evidence shall be presented relative to those charges. The purpose of the hearing under this section is to protect the teachers from arbitrary discrimination by being subjected to unfounded or inadequate charges. In the present case, however, it is evident that there are no charges which can be filed against the teacher, and it is therefore apparent that it was not the legislative purpose to include this type of reduction as a 'demotion in salary' within the meaning of section 3 so as to require a hearing.

"The legislature did not intend to thus restrict the power of the School District to make a general adjustment of all salaries to the statutory minimum where

the financial condition of the district required that such action be taken. In the instant case, there was no discrimination and the reduction was not made for the purpose of evading the provisions giving the teachers permanent tenure of office. There was no 'demotion in salary' within the meaning of the Tenure Act."

Hence, in view of the principles expressed in Smith v. Philadelphia School District, we are of the opinion that the reductions effected by defendant school district by resolution of August 16, 1938, involved neither discrimination against the teachers nor charges against them, and the reductions effected cannot be considered as "demotions" in salary within the meaning of section 3 of the Teachers' Tenure Act.

But petitioner seeks to distinguish the present situation from that in Smith v. Philadelphia School District et al., supra, because of the provisions in the bylaws and rules of the Philadelphia School District, which provided "that the salary of any employe who shall continue to hold his or her present position shall not be reduced in consequence of the adoption of this schedule except by approval of the Board."

It further appeared that prior to the adoption of the Teachers' Tenure Act the Philadelphia School District on several occasions exercised its right to make salary reductions, and payments of the salaries so reduced were accepted by the employes of that district without complaint. The Supreme Court pointed out that the bylaws and rules of the Philadelphia School District, as well as all provisions of the School Code, became a part of the contract between the Philadelphia teachers and the district. The court further pointed out that an argument that the bylaws and rules could not be changed is without merit, since both the bylaws and the School Code permitted such reduction of salaries.

In the instant case there were no such bylaws or rules of defendant school district permitting any reduction. But if the School Code itself permits such reduction,

the presence or absence of any bylaws requiring the board to act upon such reduction is immaterial. The quotation from Smith v. Philadelphia School District, set forth above, shows a clear holding by the Supreme Court that the School Code in itself does not prohibit the school district from making a general adjustment of all salaries to the statutory minimum, and points out that such reductions do not constitute a demotion in salary within the meaning of the Teachers' Tenure Act.

We must conclude, therefore, that the adoption of the resolution of August 16, 1938, the subsequent budget resolution of September 6, 1938, and the reduction of teachers' salaries in defendant school district to the minimum prescribed by the Edmonds Act was a lawful exercise of the powers granted to the directors of a school district by the School Code, and hence that petitioner herein has no standing to complain of a demotion in pay within the meaning of the Teachers' Tenure Act. . . .